IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rhonda B. Hands,                                     Case No. 3:04CV7077

      Plaintiff,

      v.                                                       ORDER

DaimlerChrysler Corp., et al.

      Defendants.

This is a pro se suit brought by Rhonda Hands against her former employer, DaimlerChrysler, and Local 12 International Union, United Auto, Aerospace and Agricultural Implement Workers of America, Jeep Unit (Union).

Plaintiff asserts three claims: 1) race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and O.R.C § 4112.02(A);  2) retaliation pursuant to Title VII and O.R.C § 4112.02(I); and 3) wrongful discharge per breach of a collective bargaining agreement (CBA) against DaimlerChrylser and breach of the duty of fair representation against the Union, pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).

Pending are defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, defendants' motions shall be granted.

**Background**

Hands began employment with DaimlerChrysler on February 11, 1985, as a utility worker, and remained there until September, 2002. While employed at DaimlerChrysler, plaintiff was also a member

of the Union. During her seventeen years of employment with DaimlerChrysler, Hands took twenty-one medical leaves and missed approximately twenty-five months of work.

On August 26, 2002, Hands applied for medical leave due to Dysthemia, a form of depression. She asked for leave until September 11, 2002. Plaintiff's psychologist, Dr. Buldas, certified her condition, and requested that she remain off work from August 27, 2002, until September 10, 2002.

When Hands submitted her leave request to the employment office, she was given a letter instructing her to attend a September 3, 2002, independent medical examination to assess her ability to return to work. DaimlerChrysler scheduled such exams for employees requesting more than three medical leaves in any eighteen-month period.

Hands did not appear for the medical exam.

After Hands failed to appear as directed for the medical examination, the third party administrator of Daimler/Chrysler's benefits program, ESIS, sent a letter date September 4, 2002, to the plaintiff informing her that her benefits were suspended as of the date of the missed medical examination.

In addition, DaimlerChrysler sent plaintiff a certified letter, likewise dated Sepetember 4, 2002, stating:

> Please report to the Employment Office immediately. You failed to report for your DEP exam scheduled for 9/3/02. Failure to report within five (5) days by September 10, 2002 at 05:30 am will result in a contractual loss of seniority pursuant to Article IX, Paragraph 8, subparagraph D – Loss of Seniority of the Collective Bargaining Agreement.

(Doc. 30, Ex. E).

2

Though Daimler/Chrysler's certified letter was postmarked September 6, 2002, Hands did not sign for and receive the letter at the Post Office until September 25, 2002.[1]

On September 10, 2002, plaintiff obtained a note from Dr. Buldas further extending her leave through October 1, 2002. Plaintiff, however, did not personally deliver this note to the employment office in accordance with the time limits established by the collective bargaining agreement.[2]

Emily Wallace, identifying herself as plaintiff's "friend," delivered the note to the employment office on September 10, 2002.[3] At the employment office, Wallace spoke with Labor Relations Representative Edward Shaeffer, who told her to have plaintiff contact either the employment office or her union

---

[1] There is some discrepancy as to the exact date plaintiff signed and received the September 4, 2002, letter from DaimlerChrysler (and, as well, a subsequent letter notifying her of the termination of her employment). Plaintiff stated in her deposition that she received the letters on September 27. Her grievance states she received them on September 25. (Doc. 30 at 40.)(Doc. 30, Ex. K at 5.) Regardless, this dispute is not material.

[2] The pertinent provision of the collective bargaining agreement provides:

> An employee shall lose his seniority for the following reasons only:
> * * *
> (e) he does not return to work when called within five (5) consecutive working days except if a certified letter from the employee is received by the Employment office or if the employee, *or a member of his immediate family*, or the Union in his behalf comes to the employment office requesting a leave of absence prior to noon of such fifth working day and such request is granted.

(Doc. 29 at 3; Doc. 32 at 33) (emphasis supplied).

[3] Defendants claim Wallace delivered the letter at approximately 1:00 pm, beyond the 12:00 pm deadline. Plaintiff claims delivery occurred at 11:00 am. This dispute is not material, as Wallace was not a family member, and thus her delivery of the letter did not satisfy the requirement of the collective bargaining agreement that delivery be by either the employee, a union representative, or a family member.

3

representative. Wallace relayed this information to Hands, but she did not contact either the employment office or union. Hands stated in her deposition, "I didn't believe or feel that I had to call anyone." (Doc. 30 at 37.) DaimlerChrysler then sent Hands another certified letter terminating her employment, effective September 10, 2002. Hands did not sign for and receive the letter until September 25 (or 27), when she received the initial certified letter.

On September 26, 2002, Hands filed a grievance against DaimlerChrysler for wrongful termination. The grievance was processed and assigned to International Representative Dan Twiss in November, 2003. For approximately one year, Twiss negotiated with DaimlerChrysler, but the company refused to reinstate Hands. Twiss subsequently withdrew Hands's grievance in November, 2004.

Hands had previously filed suit against DaimlerChrysler and the Union. *See Hands v. DaimlerChrysler Corp.*, 282 F.Supp. 2d 645 (N.D. Ohio 2003). In that case, plaintiff alleged race discrimination, disparate impact, and retaliation against DaimlerChrysler under Title VII and a hybrid § 301 claim against DaimlerChrysler and the Union. This court granted summary judgment to defendants DaimlerChrysler and the Union, and the Sixth Circuit unanimously affirmed.

On February 24, 2004, plaintiff filed the instant case, asserting discrimination and retaliatory termination under Title VII against DaimlerChrysler, and a hybrid § 301 claim against DaimlerChrysler and the Union. Defendants move for summary judgment on all counts.

**Discussion**

**1. Race Discrimination**

Hands alleges that her termination from DaimlerChrylser was racially motivated, and that she was treated differently than similarly situated employees in violation of Title VII of the Civil Rights Act of 1964 and O.R.C. § 4112.02(A).

In *Plumbers & Steamfitters Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196 (1981), the Ohio Supreme Court held that federal case law interpreting Title VII is generally applicable to cases alleging violations of O.R.C § 4112.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff in a Title VII employment discrimination suit must either provide direct evidence of discrimination, or establish a prima facie case pursuant to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

To establish a prima facie case, a plaintiff must show, by a preponderance of the evidence: 1) membership in a protected class; 2) that she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by someone outside the protected class or was treated differently than similarly situated members of the unprotected class. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999) (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff does not offer direct evidence of discrimination. Her claim, therefore, must be analyzed under the burden-shifting framework of *McDonnell Douglas*.

5

DaimlerChrysler concedes the first three requirements of the prima facie case. It maintains, however, that Hands has introduced no evidence indicating she was treated differently than similarly situated employees.

In her memorandum opposing summary judgment, Hands compares her situation to that of Brenda Troje, a Caucasian female. This comparison is misguided, however, as her situation differs significantly from Troje's. "[T]he individuals with whom the plaintiff seeks to compare his/her treatment must have . . . been subject to the same standard and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Unlike Hands, Troje attended her independent medical examination. Consequently, DaimlerChrysler did not fire her for nonappearance, as it did Hands. Troje is not an appropriate comparable for Hands.

Hands, additionally, claims that she was treated differently than four Caucasian males who failed to report to their independent medical exams. The only evidence she provides for this proposition is that those employees received slightly different termination letters from DaimlerChrysler after failing to report to their medical exams.

Plaintiff's argument places style over substance. All four men were terminated after failing to report for medical exams. So was Hands, who thus has not shown that she was treated differently than similarly situated employees of an unprotected class. Summary judgment, therefore, shall be granted for defendants as to the discrimination claim.

### 2. Retaliation

Hands further alleges that DaimlerChrysler terminated her employment in retaliation for filing a previous discrimination suit. In her memorandum opposing summary judgment, plaintiff specifically claims:

> [T]ermination was undertaken by decision makers, Carol Young and Thomas Maxon for retaliatory reasons due to Plaintiff's assertions of racial discrimination within DaimlerChrysler and specifically Plaintiff's sworn testimony during the deposition on August 14, 2004 regarding said decision makers, Carol Young and Thomas Maxon['s] discriminatory tactics and their knowledge of Plaintiff's testimony.

(Doc. 32 at 2.)

To establish a prima facie retaliation case pursuant to Title VII, Hands must demonstrate: 1) she engaged in activity protected by Title VII; 2) this exercise of protected rights was known to DaimlerChrysler; 3) DaimlerChrysler thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and 4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Moriss v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). DaimlerChrysler contests only the fourth prong of the test, and asserts that Hands cannot establish a nexus between her previous discrimination suit and the adverse employment action.

"[A]nti-discrimination statutes do not insulate an employee from lawful disciplinary action," however. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). By her own admission, Hands "conscientiously elected not to attend the [independent medical] examination," and did not respond to the "5-day letter" thereafter. (Doc. 1 at 4.) She was then discharged, as were the four Caucasian male employees who likewise failed to appear for medical examination. Thus, there is no correlation, much less a nexus, between plaintiff's protected conduct and her discharge from DaimlerChrysler. Summary judgment, therefore, shall be granted for defendants as to the retaliation claim.

### 3. Hybrid §301 Claim

Hands also alleges violations of § 301 of the LMRA, maintaining that DaimlerChrysler breached the CBA and the Union breached its duty of fair representation by intentionally failing to pursue her grievance. The Sixth Circuit described the § 301 process in *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990):

> [I]n every hybrid 301 action - breach of collective bargaining agreement and breach of a union's duty of fair representation - are interdependent; if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of the duty of fair representation claim against the union must necessarily fail with it.

To prevail on § 301 claim , plaintiff must initially show a breach of the CBA. If she does not, it is not necessary to consider the adequacy of the union's representation of her, because she could not have prevailed on a grievance based on alleged violation of the agreement.

### A. DaimlerChrysler

Plaintiff's claim that DaimlerChrysler breached the CBA rehashes her previous discrimination and retaliation arguments, with the additional contention that the company violated the agreement when it refused to accept Emily Wallace's delivery of the note extending her leave.

There is no merit to this contention, because, as pointed out above, Wallace was not among the persons authorized to deliver such communication.

The company's directive to Hands to appear for an independent medical likewise was grounded in the agreement, the pertinent provision of which was cited in the letter instructing her to appear for the examination.

8

Plaintiff has not established a genuine issue of material fact as to whether DaimlerChrysler breached the CBA. Thus, the company and union are entitled to summary judgment on plaintiff's § 301 claim.

### B. Union

Even if Hands could establish that DaimlerChrysler breached the CBA, her § 301 claim still fails because she cannot show the Union breached its duty of fair representation. Hands's § 301 claim against the Union alleges that her "wrongful discharge has not been reversed due to the intentional delay of the Company and the Union." (Doc. 1 at 8.)

The Union asserts that plaintiff's failure to exhaust available internal union remedies is fatal to her § 301 claim. This is not so. "[E]xhaustion of . . . internal union procedures is not necessarily a prerequisite to filing suit against a Union for breach of the duty of fair representation." *Hands v. DaimlerChrysler Corp.*, 282 F.Supp 645, 654 (N.D. Ohio 2003).

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The Supreme Court held in *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991), that "a union's actions are arbitrary only if, in light of the circumstances, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." [internal citation omitted].

In the instant case, approximately two years passed between plaintiff's discharge and notification from the union that it had withdrawn the grievance. Plaintiff alleges that this delay was intentional. In *Armstrong v. Chrysler Corp.*, 972 F.Supp 1085, 1090 (E.D. Mich 1997), the court rejected a similar claim based on a delay of two years in processing a grievance:

9

> [T]he length of time the union took to process plaintiff's grievance is not per se unreasonable. Plaintiff has submitted no proof that the union typically processes other grievances faster than his, or that the union acted with bad faith. Moreover, nothing suggests that the passage of time affected the ultimate disposition of plaintiff's grievance. Therefore the union did not arbitrarily, unreasonably, or irrationally delay in the processing of plaintiff's grievance.

*Id.*

Like the plaintiff in *Armstrong*, Hands has submitted no evidence indicating the Union typically processes grievances more quickly than her own.

Plaintiff, furthermore, has not shown that the Union made a bad faith decision to withdraw her grievance. "[B]ad faith is required to show breach of the duty where the union has made a decision that the employee's grievance was without merit." *Id*. at 1089. The Union simply determined that her grievance lacked merit and could not be won at arbitration, and chose not to pursue it further.

Even if plaintiff could offer proof that her grievance was meritorious, "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious." *Vaca*, 386 U.S. at 195. Because plaintiff has introduced no evidence indicating the Union acted in bad faith, her claim for breach of duty must fail.

**Conclusion**

It is, therefore:

ORDERED THAT defendants' motions for summary judgment be, and the same hereby are granted.

So ordered.

                                                            /s/ James G. Carr
                                                            James G. Carr

Chief Judge